```
                    UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF VERMONT


JOHN GRENIER,                         :
                                      :
          Plaintiff,                  :
                                      :
     v.                               :      File No. 1:09-CV-121
                                      :
INGRID JONAS, Detective-              :
Sergeant, in her individual           :
capacity,                             :
                                      :
          Defendant.                  :
```

## RULING ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION TO AMEND COMPLAINT
(Papers 3 and 6)

Defendant Ingrid Jonas moves to dismiss this § 1983 case for failure to state a claim on which relief can be granted. Paper 3. Plaintiff John Grenier opposes the motion to dismiss and moves to amend his complaint. Paper 6. For the reasons below, the Court grants the motion to amend and denies the motion to dismiss.

I. Background

Treating the allegations in Grenier's complaint as true, the facts are as follows. On November 26, 2007, a complainant identified as "S.S." went to the Richford Health Center for mild food poisoning. While there, she reported she had been sexually assaulted. Defendant Jonas, a State Police Detective-Sergeant with the Northwest Unit for Special Investigations, met with S.S. three days later and took a statement from her. In the

statement, S.S. accused Grenier of sexually assaulting her sometime in October. Paper 1 ¶ 6.

Grenier was arrested and taken into custody in connection with S.S.'s allegations on December 3, 2007. Id. ¶ 7. The next day, Grenier was arraigned, charged with sexual abuse of a vulnerable adult under 13 V.S.A. § 1379, and held without bail. Id. ¶ 8. The State amended the charges against Grenier on December 18, 2007, adding a count of sexual assault under 13 V.S.A. § 3252(a)(1). Grenier was arraigned on the new charges on December 20, 2007, and bail was denied for the second time on December 21, 2007. Id. ¶¶ 10-11.

On December 13, 2007, S.S. left a voice mail for Jonas, in which she alleged a new instance of sexual assault by Travis Denton, a neighbor of hers. The voice mail alleged the new incident occurred the day after Grenier allegedly assaulted her. Jonas heard this voice mail by early January 2008, at the latest. Id. ¶ 16. She knew S.S. had made multiple sexual assault allegations in the past, at least some of which were determined to be baseless and were not prosecuted. Id. ¶¶ 13-15. On hearing the voice mail, Jonas determined the new allegations against Denton were false and did not investigate them. Id. ¶¶ 17-19.

Jonas withheld the voice mail from the prosecutor in Grenier's case until mid-February 2008. Id. ¶ 20. When she

2

disclosed the voice mail, the prosecutor offered to agree to the release of Grenier on conditions. The Vermont District Court held an emergency hearing, and Grenier was released on February 15, 2008. Charges against Grenier were subsequently dismissed without prejudice. Id. ¶¶ 21-23.

Grenier filed this case against Jonas under 42 U.S.C. § 1983, alleging a violation of Due Process. Specifically, Grenier claims he was wrongfully imprisoned from early January to mid-February 2008 as a direct consequence of Jonas withholding the voice mail. Id. ¶¶ 28-33. As a remedy, he seeks compensatory and punitive damages. Id. at 6-7.

II. Standard of Review

On a Rule 12(b)(6) motion to dismiss, this Court treats all factual allegations in the complaint as true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and draws all reasonable inferences favoring the plaintiff from the facts alleged, Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). To withstand the motion, the complaint must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court recently noted, however, that "[f]actual allegations must be enough to raise a right of relief above the speculative level," making the plaintiff's claim "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). The plausibility standard does not require detailed facts establishing every element of the plaintiff's prima facie case, but it does require more than "'naked assertion[s].'" Id. (quoting Twombly, 550 U.S. at 557).

III. Discussion

Jonas attempts to dispose of this case summarily, arguing she had no further responsibilities once the state court found probable cause for Grenier's arrest. Paper 3-2 at 5-6. ("'[O]nce the evidence establishes probable cause, an officer is not required to continue investigating, sifting and weighing information, nor is an officer obligated to investigate the suspect's plausible claims of innocence.'" (quoting Celestin v. City of New York, 581 F. Supp. 2d 420, 432 (E.D.N.Y. 2008))). Because she received the voice mail after the state court found probable cause, Jonas asserts her "handling of the voicemail . . . could not have violated [Grenier's] constitutional rights." Id. at 7.

This argument has no merit. The voice mail required no further "investigating" from Jonas — it fell in her lap. The question is not whether Jonas had a continuing obligation to investigate, but what the nature and extent of her obligations to

4

disclose were upon receiving the voice mail. See, e.g., Nelson v. Hernandez, 524 F. Supp. 2d 212, 224-25 (E.D.N.Y. 2007) (discussing police obligations with respect to exculpatory evidence, independent of whether probable cause existed for the initial arrest). Having disposed of this argument, the Court turns to the merits.

   A.   Applicable Law

The parties offer different frameworks for analyzing the situation. Jonas argues in terms of the Second Circuit's decision in Russo v. City of Bridgeport, 479 F.3d 196 (2d Cir. 2007), which established that wrongful pretrial incarceration caused by police suppression of exculpatory evidence violates the Fourth Amendment. Grenier frames the case as a violation of Brady v. Maryland, 373 U.S. 83 (1963), which interpreted Due Process as requiring police to disclose certain exculpatory evidence in time for its use by the defendant.

In Russo, a criminal suspect was arrested for armed robbery and detained pending trial. The police held a videotape of the robbery that strongly indicated the suspect's innocence, but refused to turn it over to the prosecution or defense counsel. Over 60 days later, the prosecutors managed to obtain the video; the suspect was eventually released and charges were dropped based on the video's contents. The Second Circuit held such a period of wrongful detention — caused by police mishandling of

exculpatory evidence — violated the Fourth Amendment[1] and was actionable under § 1983.  Russo, 479 F.3d at 203-10.  To establish liability in such a situation, a plaintiff must show "(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'"  Id. at 205 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).

Under Brady and its progeny, "[t]he prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment.  This duty covers not only exculpatory material, but also information that could be used to impeach a key government witness."  United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001) (internal citation omitted).  In particular, "a Brady violation occurs . . . where the government suppresses evidence that could reasonably . . . put the whole case in such a different light as to undermine confidence in the verdict."  Id. at 139 (internal quotation and citation omitted).  To make out a Brady claim, a plaintiff must establish "(1) the Government, either willfully or

---

[1] Previous cases had suggested such a period of wrongful incarceration could violate the Due Process clause, but the Second Circuit found the Fourth Amendment to be a more textually-specific source for the right in question.  Russo, 479 F.3d at 206-09.

6

inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice." Id. at 140 (citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999)).

At first glance the government's obligation to disclose favorable evidence under Brady appears similar to the suspect's right to be free of wrongful pretrial incarceration under Russo. Both prohibit the police from suppressing favorable evidence, and in cases like Grenier's, disclosing favorable evidence can lead to the suspect's release. The nature of the claims, however, is different. Russo focuses on the pretrial detention, which can violate the Fourth Amendment as an unlawful seizure in some situations. See Russo, 479 F.3d at 203-10. By contrast, Brady's Due Process protections are designed to guard against unfair results in the criminal proceedings — that is, the outcome at the end of the pretrial detention, not the pretrial detention itself. See Coppa, 267 F.3d at 139 ("[T]he essential purpose of [Brady] is to protect a defendant's right to a fair trial by ensuring the reliability of any criminal verdict against him."). Focusing on the outcome, a Brady claim operates in hindsight: a failure to disclose evidence will only violate the Constitution if it jeopardizes the reliability of a judgment against the defendant. See id. ("[T]he scope of the government's constitutional duty . . . is ultimately defined retrospectively, by reference to the

7

likely effect that the suppression of particular evidence had on the outcome of the trial.").

Grenier's core grievance is that he was incarcerated for a month longer than he otherwise would have been, had Jonas timely disclosed the voice mail. Because Grenier seeks a remedy for the pretrial detention itself, not the outcome reached at the end of the detention, his claim is governed by Russo and the Fourth Amendment. See Russo, 479 F.3d at 203-10.

Grenier attempts to fit his claim into the Brady framework by arguing his release in February constitutes an erroneously-reached outcome, when compared to the alternative outcome of release in January. Paper 15 at 4-8. This kind of timing claim stretches the scope of Brady, though, since Brady only requires evidence to be disclosed in time for the defendant to make effective use of it. See United States v. Rodriguez, 496 F.3d 221, 226 (2d Cir. 2007); Leka v. Portuondo, 257 F.3d 89, 100 (2d Cir. 2001). In particular, the Second Circuit has indicated "effective use" of the disclosed evidence refers to a defendant being able to use it during a trial or plea proceeding:

> [W]e reiterate the longstanding constitutional principle that as long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner. There is no Brady violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial, or at a plea proceeding.

8

Coppa, 267 F.3d at 144 (internal citations omitted). These timing limitations are consistent with the purpose of Brady, as a Due Process safeguard against erroneously-reached criminal judgments.[2] See id. Grenier's attorney apparently received the evidence before any plea proceeding or trial, and Grenier alleges no difficulty in making "effective use" of the exculpatory evidence — indeed, he was able to immediately secure release by using the evidence. Therefore Grenier's timing argument does not create a Brady claim. See id.; Rodriguez, 496 F.3d at 226; Leka, 257 F.3d at 100; see also Ambrose v. City of New York, 623 F. Supp. 2d 454, 472 (S.D.N.Y. 2009) ("[D]isclosure of Brady material is not untimely if a criminal defendant is provided the material in time to use it at the time of trial or plea; the fact that suppression of Brady material could prevent a defendant from securing an earlier favorable termination of his or her case is not considered as a potential source of 'prejudice' within the meaning of the Brady rule.").

Grenier also attempts to fit his claim into the Brady framework by challenging the general notion that Brady focuses on outcomes, rather than pre-trial wrongs. He cites a Seventh

---

[2] The Supreme Court subsequently held impeachment evidence need not be disclosed before a plea proceeding. United States v. Ruiz, 536 U.S. 622 (2002). While this holding adds a further layer of detail — distinguishing between exculpatory and impeachment evidence for the purposes of plea proceedings — it does not change Brady's essential focus on the criminal outcome, rather than pretrial events.

9

Circuit case and three district court cases from Illinois, which suggest <u>Brady</u> can provide a remedy for pre-trial harms even when the defendant is acquitted at trial, or when charges are dismissed before trial.  <u>See</u> Paper 15 at 5-8 (citing <u>Jones v. City of Chicago</u>, 856 F.2d 985 (7th Cir. 1988); <u>Craig v. Chicago Police Officers</u>, No. 05 C 0172, 2005 WL 1564982 (N.D. Ill. June 9, 2005) (unreported); <u>Carroccia v. Anderson</u>, 249 F. Supp. 2d 1016 (N.D. Ill. 2003); <u>Kidd v. City of Chicago</u>, No. 02 C 9534, 2003 WL 22243938 (N.D. Ill. Sept. 26, 2003) (unreported)).  Based on these cases, Grenier argues his pretrial incarceration is actionable under <u>Brady</u> even though the ultimate disposition of the case was in his favor.

The Court rejects Grenier's argument.  As recently noted by the Southern District of New York, the cases cited by Grenier have been followed by very few other courts — none within the Second Circuit — and their validity is unclear even within the Seventh Circuit.  <u>See</u> <u>Ambrose</u>, 623 F. Supp. 2d at 467-73 (discussing thoroughly the scope of <u>Brady</u>, and following the majority view that <u>Brady</u> only covers adverse criminal judgments).  Moreover, in our circuit <u>Russo</u> provides a remedy for wrongful pretrial detention caused by police mishandling of evidence, so it is unnecessary to stretch <u>Brady</u> to cover the situation.  Thus the Court concludes <u>Brady</u> does not cover not pre-trial wrongs like those complained of by Grenier in this case.  <u>See</u> <u>Ambrose</u>,

10

623 F. Supp. 2d at 472 ("The Brady doctrine is meant to protect criminal defendants from unreliable convictions arising from unfair trials (or plea proceedings), and not from any other type of harm." (citing Coppa, 267 F.3d at 139)).

In sum, Brady is not a good fit for Grenier's claim, and Jonas is correct that Russo and the Fourth Amendment govern this situation.

### B. Evaluating Grenier's Claim Under Russo

As noted above, a Fourth Amendment claim under Russo requires a plaintiff to show "(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'" Russo, 479 F.3d at 205 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).

Jonas focuses on the final requirement, arguing her conduct did not rise to the level of "shocking the conscience" for two reasons. Paper 3-2 at 7-13. First, she claims Grenier has not alleged enough facts to show the voice mail was actually exculpatory, and therefore it could not have "shocked the conscience" to withhold it. Id. at 10-11. According to Jonas, Grenier's complaint "merely states that S.S. left a message saying that she had been sexually assaulted by another man, a

11

neighbor living in her apartment complex, and that, 'upon information and belief,' disclosure of the voicemail resulted in the prosecutor dropping the charges." Id. at 10.  Jonas argues that the voice mail dealt with a separate incident and that Grenier alleges insufficient facts relating it to the charges against him, so it was not sufficiently exculpatory to trigger Russo.  Id. at 11.  In response, Grenier moves to amend his complaint and add further factual allegations connecting the voice mail to the sexual assault charges against him.  Paper 6.

Taking the facts in the proposed amended complaint as true, and drawing all reasonable inferences in Grenier's favor, Harris, 572 F.3d at 71, Grenier successfully shows the voice mail had a strong impeachment value.[3]  He alleges reasons why the new claim of sexual assault was not credible, and why it was a form

---

[3] An initial question is whether impeaching evidence — as opposed to exculpatory evidence — can fall under the protections of Russo.  In Russo, the mis-handled evidence was exculpatory, directly disproving the suspect's guilt.  See Russo, 479 F.3d at 201-02.  Similarly, the line of cases relied upon in Russo all dealt with direct exculpatory evidence.  See Baker v. McCollan, 443 U.S. 137 (1979); Fairley v. Luman, 281 F.3d 913 (9th Cir. 2002); Cannon v. Macon County, 1 F.3d 1558 (11th Cir. 1993); Sanders v. English, 950 F.2d 1152 (5th Cir. 1992); Satchell v. Dilworth, 745 F.2d 781 (2d Cir. 1984).  Whether impeaching evidence is covered by Russo may be an open question.
  Conceptually, the "shock the conscience" standard from Russo is equally applicable to impeachment evidence, and neither party argues to the contrary.  Thus for purposes of resolving this motion, the Court assumes Russo applies to impeaching evidence. Cf. Giglio v. United States, 405 U.S. 150, 154 (1972) (treating impeaching evidence and exculpatory evidence equally, in the Brady context).

of retaliation by S.S. against Travis Denton.  See Paper 6-2 at ¶¶ 7-11, 15-17; 25-27.  By reasonable inference, S.S.'s false allegation against Denton undercuts her credibility as a complainant.  This would be particularly true with respect to Grenier's prosecution, as the false allegation against Denton was closely related in both time and circumstance to the allegation against Grenier.  Moreover, Grenier alleges facts consistent with the voice mail having high impeachment value: "Shortly after the voice mail was disclosed to the prosecutor, the prosecutor offered to agree to the release of Plaintiff on conditions.  The Vermont District Court then held an emergency hearing. . . . Plaintiff [was] immediate[ly] release[d] from jail.  The prosecutor subsequently dismissed the charges . . . ."  Id. ¶ 29.  For purposes of a motion to dismiss, Grenier's amended complaint contains sufficient facts to establish a high impeachment value for the voice mail.  See Iqbal, 129 S. Ct. at 1937.

Second, Jonas argues Grenier's complaint fails to allege facts showing a culpable state of mind.  "The state of mind of a government defendant is an integral aspect of any 'shock the conscience' standard."  Russo, 479 F.3d at 210.  Specifically, a Russo plaintiff must show the government withheld evidence intentionally or with deliberate indifference.  Id.  Jonas argues Grenier has failed to allege facts showing intent or deliberate indifference, and "the most that can be said is that the delay

13

[in turning over the voice mail] was mere negligence." Paper 3-2 at 11.

Taking the facts in the complaint as true, Grenier has successfully alleged intent or deliberate indifference. As explained above, the circumstances surrounding the voice mail suggest S.S. was lying in her new allegation of sexual assault against Mr. Denton, and this was enough to impeach the credibility of her allegations against Grenier. Jonas had just finished investigating the allegation against Grenier, so the relevance of the voice mail to Grenier's case should have been obvious to her. Also, the lawyers' and court's responses to the voice mail — holding an emergency hearing and releasing Grenier from custody — suggest the voice mail's importance. Given these circumstances, the fact that Jonas waited at least a month before disclosing the voice mail is sufficient to create an inference of intent or deliberate indifference. See Harris, 572 F.3d at 71 (noting all reasonable inferences are to be drawn in plaintiff's favor on a motion to dismiss); cf. Paper 6-2 at ¶ 28 (proposed amended complaint alleging Jonas "knowingly and intentionally withheld the voice mail").

Jonas urges the Court to "draw on its judicial experience and common sense to determine [that] the allegations are more likely explained by lawful conduct." Paper 3-2 at 12 (citing Iqbal, 129 S. Ct. at 1950). Yet the only alternative explanation

Jonas suggests is that she "did not view the [voice mail] as having any bearing on the charges against [Grenier]," id., which is sufficiently contradicted by the facts in Grenier's complaint that the Court cannot regard it as a more likely explanation. Moreover, even if Jonas did regard the voice mail as unrelated to the charges against Grenier, it is not necessarily more likely that this view was held out of negligence than deliberate indifference.

In sum, Grenier's amended complaint alleges a Russo violation sufficient to meet the motion to dismiss standard.

C. Qualified Immunity

Jonas also asserts qualified immunity as a defense. Under qualified immunity doctrine, government actors are not liable for damages unless they "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified immunity inquiry has two steps. First, the court asks whether a plaintiff has shown facts that violate a constitutional right. Second, if a violation is shown, the court asks whether the right in question was "clearly established" at the time of violation. See Saucier v. Katz, 533 U.S. 194 (2001) (clarifying the two-step inquiry), modified by Pearson v. Callahan, 129 S. Ct. 808 (2009) (holding that courts can reverse the order if desired). The defendant receives qualified immunity unless both

prongs are answered in the affirmative. <u>Pearson</u>, 129 S. Ct. at 815-16. Because the above discussion dealt with the merits of Grenier's claim, only step two remains to be addressed.

For qualified immunity purposes, "clearly established" means the right has been recognized by the Supreme Court or the Second Circuit, and the right is clear enough such that when it is applied "in light of the specific context of the case" the outcome is not in doubt. <u>Saucier</u>, 533 U.S. at 201. Phrased slightly differently, there must be no uncertainty — in either the principle or how it applies — in order for government actors to be held liable. <u>See</u> <u>Anderson v. Recore</u>, 317 F.3d 194, 197 (2d Cir. 2003); <u>Poe v. Leonard</u>, 282 F.3d 123, 132-33 (2d Cir. 2002).

Jonas does not dispute that <u>Russo</u> established a Fourth Amendment right to be free from "prolonged detention caused by law enforcement officials' mishandling or suppression of exculpatory evidence in a manner which shocks the conscience." <u>Russo</u>, 479 F.3d at 211. Rather, she argues the facts of this case do not constitute a clear enough <u>Russo</u> violation for her to be held liable. <u>See</u> Paper 3-2 at 15.

In <u>Russo</u>, the Second Circuit relied on three factors in finding a violation of the Fourth Amendment: "(1) the length of time of Russo's wrongful incarceration, (2) the ease with which the evidence exculpating Russo — which was in the officers' possession — could have been checked, and (3) the alleged

16

intentionality of [the defendants'] behavior." Russo, 479 F.3d at 209. In our case, accepting all the facts in the complaint as true, Grenier was incarcerated for about six weeks as a result of Jonas withholding the voice mail. While shorter than the overall incarceration in Russo, this is comparable to the portion of Russo's detention attributable directly to police misconduct.[4] The contents of the voice mail were directly available to Jonas, making "the ease with which the evidence . . . could have been checked" completely minimal. Id. Grenier also alleges intent or deliberate indifference, and as discussed above, the facts at this stage in the proceeding are enough to bear the allegation. In sum, the facts as described in Grenier's complaint appear to fall safely within the Fourth Amendment violation outlined in Russo. Therefore the Court concludes "it would be clear to a reasonable officer that [her] conduct was unlawful in the situation [she] confronted," Saucier, 533 U.S. at 202, and the Court denies qualified immunity at this stage in the proceeding.

IV. Conclusion

At the motion to dismiss stage, this Court is confined to the facts alleged in the complaint. See Friedl v. City of New

---

[4] Russo was incarcerated from mid-September 2002 to late April 2003. Russo, 479 F.3d at 199-203. However, only the first two months of this were caused directly by the police officers' withholding of evidence. Id. at 202 ("[T]he record indicates a 68-day time period . . . between the police interrogation on September 18, 2002 and the earliest date on which the tape may have been obtained from [the defendants].").

17

York, 210 F.3d 79, 84 (2d Cir. 2000) ("Vacatur is required even when the court's ruling simply makes a connection not established by the complaint alone or contains an unexplained reference that raises the possibility that it relied on matters outside the pleading in granting the defendant's Rule 12(b) motion." (internal quotation and citation omitted)). Applying the law strictly to the facts alleged in Grenier's amended complaint, this Court concludes Grenier has successfully alleged a Russo claim and qualified immunity does not apply. These conclusions may change at the summary judgment stage, however, with affidavits and other evidence further developing the background to the events in question.

For the foregoing reasons, Grenier's motion for leave to amend complaint (Paper 6) is GRANTED, and Jonas's motion to dismiss (Paper 3) is DENIED. Plaintiff shall file forthwith file the amended complaint.

Dated at Brattleboro, in the District of Vermont, this 5th day of March, 2010.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
Senior United States District Judge